Barry Paisner for Millie Shaw, the Plaintiff Appellant. I'd like to reserve four minutes for rebuttal, Your Honor. All right. This appeal has two issues. The first one is, was it an abuse of discretion for the District Court to hold that the government's position was substantially justified in the plaintiff her equal access to justice fees. The second issue is a discretionary issue, and it's whether the Navajo Nation, who's not a party, should be deemed a party or deemed a real party in interest for the purpose of disqualifying the prevailing party, Ms. Shaw, for the purposes of equal access to justice. On December 22nd, 1974, in Washington, the Settlement Act was enacted, required Ms. Shaw to prove on that day that she was a legal resident. That same day, in Red Lake, Arizona, a remote town in Navajo Nation in northern Arizona, Ms. Shaw, an adult, was living with her family on the family ranch where the family had farmed, had done subsistence farming for generations. Nothing changed for Ms. Shaw. She continued this use. When she went before the agency, they found that she did not use the land in a traditional manner. So, it has to do with Navajo land tenure, where they referred to it as a customary use area where the people ranch and farm based on seasonal conditions, and that's what Ms. Shaw's family did. She proved that in 1974, on December 22nd, 1974, she in fact was using the customary use area for traditional purposes of grazing. Well, she did. She prevailed. She prevailed. On that issue. But the question before us is not a relitigation of the merits. It's whether the government's position was substantially justified. And on top of that, we review for views of discretion. So, why doesn't the fact that reasonable minds can differ in terms of how to construe the evidence presented in this case means that the government's position was substantially justified? I mean, you have multiple federal district, the federal district court as well as the Ninth Circuit had taken a look at this. And while some judges would have denied relief, a majority of the judges, ultimately a majority of the Ninth Circuit panel granted relief. Doesn't that strongly suggest that the government's litigation position was substantially justified? No, I do not believe so, Your Honor. I think that is what the district court relied on, was that it's subject to reasonable debate, but that is not the test. If that was the test, if it's simply subject to reasonable debate, there would never be fees granted because virtually every case, every litigant, we have a reasonable debate. Between the bench and the bar, there's a reasonable debate. It's whether a reasonable person looking at it would find that it was justified. And in the Ninth Circuit, this case was overturned on substantial evidence, on a substantial evidence basis. So... Maybe I didn't get my question across clearly. We're well aware that the standard is whether the government's position is substantially justified. It's somewhat of a mixed evidentiary record. I know you may take issue with that. The federal district judge thought that the government's position was substantially justified in the sense that it granted summary judgment for the government. It came up here on appeal on a panel of three. At least one judge thought the evidence went the other way and would have ruled in the government's favor. So when you look at that, I think it strongly suggests that the government's position was substantially justified. If there was a full analysis done by four judges and two judges thought that the government should have prevailed, the other two thought that your client should have prevailed. I believe that is a factor, Your Honor. And if you look at the case law in the Ninth Circuit, a split decision is a factor, but it's not the only factor. And that the district court in this case relied on it, if you read the rule, as the only factor. And that is error because it was the angering court say that it takes an unusual case to find a reversal on substantial evidence to then find that the government's position was substantially justified. So in this case, I simply that there was a disagreement between the judges, a split decision is not a basis to find substantial justification. If you look at the split decision cases in the Gonzalez case went up to the Supreme Court. There was six, I believe there were six or seven judges in disagreement in that case. In Bay City, it was unanimous before the panel, but in bank, it was reversed. And there was many judges on both sides. And Bay City also involved a very small issue. That's not what we have here, Your Honor. What we have here is a hearing officer saying that Ms. Shaw was not involved in any traditional lifestyle. And then we have the giving her entitlement to benefits. I mean, that is a strong statement. And then on top of that, Your Honor, the case is remanded, ordering benefits, which is highly unusual. And that just shows the strength of Ms. Shaw's case and the weakness in the government's case that the court actually did not remand for further proceedings. They said, no, this record is complete. This record demands certification. Something Ms. Shaw had been, she lost her house, her family farm 49 years ago. It was a resounding decision in her favor and against the government. And Your Honor, do you want me to address the real party and interest issue? I ask a question before we get to that. What was the scope of the fees that were sought here? Did it cover both the administrative aspect of the case as well as then the proceedings in that came up to the... No, Your Honor. I believe it's for the summary judgment proceedings at district court and the court of appeals briefing. But strictly for what was in the federal courts? Yes. Yes. With regard to the real party and interest, well, first of all, three cases in the District of Arizona have rejected this. The government appealed those cases and then voluntarily withdrew their appeal, dismissed their appeal. I think whether or not Ms. Shaw incurred the fee is answered by two cases. One is the Askew versus Ralph, the Supreme Court case where on the equal access to justice, the court held that the EJER requires the award to be paid to the prevailing party and not to the attorney who had a beneficial interest in it. And then I think this court has in a number of cases found that incurring the fee does not mean actually paying the fee. I think the case that is most on point is Morrison versus CIR, which is a tax case, but it's the same language as the Equal Access to Justice Act. And what it says is that the prevailing party incurs fees as long as he assumes a contingent obligation to pay the fees in the event he's able to recover them. That's exactly Ms. Shaw's agreement, which is in the record at 52. She agrees if she prevails in the attorney's fees litigation that she will turn those fees over to the Navajo Nation. Thank you. MS. SHAW Thank you, counsel. May it please the Court, Brian Toth from the Department of Justice representing the Office Navajo Hopi Indian Relocation, which I'll call OMNIR. The district court's order denying attorney's fees should be upheld. It was not an abusive discretion. There are two arguments the government is making here. The court need not reach the second one if it agrees with the district court's reasoning that, well, if it agrees that the district court's reasoning was not an abusive discretion, that the government's position was substantially justified. The second issue is whether Ms. Shaw incurred the fees, and we contend that she did not here. As to the first issue, Judge Weehan, the objective indicators here that this court has relied on to determine substantial justification support, concluding the district court didn't abuse... JUDGE WEEHAN It's interesting here is, you know, the Supreme Court in articulating the standard that governs here in Pierce v. Underwood defines substantially justified with reference to the standard that's used in administrative law or substantial evidence. That's exactly what it did. It took the substantial evidence standard and said that that's what is the standard for concluded in the merits decision that the government's position was not supported by substantial evidence. So, why does it not suggest under Pierce that it's not substantially justified? So, in Pierce, the discussion of the substantial evidence standard was to demonstrate that the word substantial in that phrase doesn't necessarily mean a high degree of evidence, that it means something less. Substantially justified, the Supreme Court in Justice Scalia's opinion made clear, means something other than substantially correct. It means that the standards could not be identical for the reason that the structure of EJ would be undermined entirely. And this court has recognized that in the Al Harvey case against INS that we cite in the red brief at 17, along with, I believe, in the Kelly against Bowen case, which we also cite. So, although the situations where there is going to be substantial justification for a decision that was reversed due to lack of substantial evidence will be unusual, I believe this court has said. We believe that this case is the unusual circumstance. And here's why. As I was mentioning, the objective indicators here that the court has looked to, for example, the number of judges who agree or disagree with the underlying agency decision away in the government's favor. Also, the underlying factual issues here had to deal, they dealt with how the court was to construe inferences in the record, in the evidentiary record. And we submit that reasonable minds could disagree about whether the inferences in the record could have been construed in Ms. Shaw's favor in the way that a hearing officer construed them on the merits. Now, we accept the loss on the merits. O'Neill has certified Ms. Shaw for benefits. So, I'm not here to re-argue liability. But I do want to just point out that the issue on the merits really had to do with a very fine, nuanced reading of the record. Some judges chose to infer certain conclusions from the evidentiary record in Ms. Shaw's favor, whereas the dissenting judge and the district judge decided to construe those in favor of the hearing officer and would have upheld the decision. So, we think in that, in that neurocircumstance, this is the decidedly unusual case where the government's position was substantially justified. I'd like to also note that, you know, substantially justified means a reasonable basis in both fact and in law. And as to the basis in law, the legal arguments on the merits of the underlying case were held unanimously in favor of the government. That is, both the district court and the majority of the Court of Appeals, as well as the dissent, agreed that the government had applied the correct legal standard for determining whether Ms. Shaw was a resident of the Hopi partition lands. This is discussed in the district court opinion, the underlying merits opinion, pages 19 and 20 of the excerpts of record, and the Court of Appeals opinion on the merits at pages 8, that's the majority opinion, and 11, the dissent, all agree with the government on this legal point about the correct standard of review on the merits. In addition, the Eugene Daw case, which was a case adjudicating benefits as to Ms. Shaw's brother, it's an unpublished order, but it did resolve that issue as well in the government's favor, as did a number of other cases cited and collected by the district court at pages 19 and 20 of the excerpts of record. So, our submission then is that not only do the objective indicators show that the government's position was substantially justified, but also that there was a reasonable basis on both facts and the law for the government's position here. Not that the government's position was adjudicated to be correct, it wasn't, we accept that, but that certainly there was enough support to deny fees. If the court disagrees, if the court believes that that was an abuse of discretion, it could affirm on the alternative ground that Ms. Shaw did not incur the fees here. The court need not reach that issue, but it may. It could, if it wants to, I mean, if it determines that it was an abuse of discretion as to the justification question, it would have to either reach that second issue or send it back to the district court. It couldn't just reverse the order denying fees because the government did make that argument as well as one other argument that the district court didn't reach on the adjudicating fee application. And I'm happy to discuss that issue now, unless the court had further questions on the substantial justification point. True response to his argument that, you know, she had agreed to pay the fees over to Navajo Nation and therefore that gives her, that satisfies the incurred requirement. So, if you look at her, if you look at her declaration, which is at pages 52 and 53 in the excerpts of records, volume two, she does say that she wants the fees to be paid to the nation, but she nowhere says that she is under any sort of contractual agreement to do that. And that was the issue in this that distinguishes, that's the basis that distinguished this from Morrison, where the plaintiff there was found to have a contingent obligation or either a contingent or non-contingent obligation to turn the money over. That's not to say that Ms. Shaw couldn't, you know, or someone in her position couldn't enter into that type of agreement with counsel, but we just don't have any evidence of that in the record, despite the government's discovery requests for all agreements between Ms. Shaw and counsel. So, the argument that the government's making here on appeal is framed a little bit differently. It's a little differently focused than what the three district courts that my friend refers to adjudicated, which was the real party and interest issue. We framed this in terms of the statutory obligation to determine that the fee recipient actually incurred the fees before they can be found payable, properly payable to her. And our submission here is that under no situation would Ms. Shaw be obliged to pay fees. If fees were awarded, they would be paid by the government. But if fees were denied, then fees have already been paid by the Navajo Nation. And that's demonstrated by the billing records that are in the second following of the excerpt's record. It's demonstrated by the retention agreement between counsel and the Navajo Nation. And one other factor I think that weighs in the government's favor here about the retention agreement is that it's especially unusual in trying to distinguish this situation from other situations where fees are awarded to pro bono counsel or counsel for a legal services corporation. It's important to note here that the an ordinary client would make, that Ms. Shaw would ordinarily make. And this is in the record at pages 126 and pages 129 of the excerpts of the record, the second volume. At page 126, under the paragraph nine marked supervision, it talks about work performed under the contract that must be assigned by the Attorney General of the Navajo Nation or her designee. And that normally made by the client in an attorney-client relationship shall be made by the Attorney General or her designee in consultation with the appropriate officials of the Navajo Nation. That type of control is what distinguishes this case from these other situations that involve pro bono counsel or allow fee awards that further the purposes of each of the Equal Access to Justice Act. So I would point the court, if the court's inclined to reach this issue, which again, it doesn't have to, but I would ask the court to look at the Eighth Circuit's decision in the ComServe case and the Seventh Circuit's decision in the Owner-Operator Independent Association of Drivers case. Both of those contain a discussion of what it means for fees to be incurred. And both of them focus on the purposes of EJA, which are principally to eliminate the vindication of their legal rights. The Navajo Nation, it's indisputed, it's not disputed that the Navajo Nation is not a small entity here. It exceeds the net worth requirement under EJA to be a party, an eligible party. If it were a party, it exceeds the number of employees. If it, you know, if it were considered a party, it would not be eligible to receive fees. But we think these factors further weigh in support of concluding that the fees were not the Navajo Nation, which was paying fees to counsel throughout. And then the second provision of the contract that I would point the court to that's unusual here is that on page 129, under the ownership of product, all documents or other work product generated on behalf of the Nation in connection with the contract, legal writings, briefs, research, et cetera, become the property of the Navajo Nation, not of Ms. Shaw here. So again, normal Arizona rules of professional conduct would look to those indicators as who is the client in the relationship, who is in control of the representation. And it appears to be that it is the Navajo Nation here. And finally, I would note on this issue, the court's unpublished order in the George case was another O'Neill case, came before yet a different panel of the court. And the government's only arguments that we advanced in that case in opposition to a fee petition that was filed after near, I'm sorry, another applicant prevailed against O'Neill on the merits. The only arguments we raised were that the fees were not incurred by that applicant, but by the Navajo Nation. And we produced similar documentation of the representation agreements there. So the unpublished order denied fees on this very ground that we're advancing here. So unless the court has any further questions, I would ask that the district court's order be affirmed. Thank you, counsel. This is not the unusual case that Meyer versus Cohen Act refers to and the Fang-Gara case referred to. They compare substantial justification and substantial evidence. And the Meyer card said, substantial evidence means such reasonable evidence as a reasonable person might accept as adequate to support a conclusion. And substantial justification means justification to a degree that could satisfy a reasonable person. They're very similar. The court said, given the significant similarity between the standard. It does cite the Al Harby case. And maybe what makes it unusual here is the fees you're seeking are for, as you said earlier, for the federal litigation. And the federal litigation is not the merits and whether there's substantial evidence on the merits. It's whether or not the government can properly argue that there was substantial evidence in the agency proceedings. So it's kind of a derivative question. And there does seem to have been a significant difference of opinion. There's a dissent in the Ninth Circuit opinion as to whether or not one could reasonably believe that there was substantial evidence in the agency proceedings. So maybe if you view it as the derivative question, it is the unusual case and the government's position could still be substantially justified even if the agency's position was not. As I read the dissent, Your Honor, it's critical of not giving the agency due regard in their fact-finding. I do not see it as really a disagreement, an argument on the facts and law, other than saying that under the APA, the agency's supposed to be given deference. And the Judge Bade was critical of that. I think that a reasonable person looking at what the majority found, that Ms. Shah was immersed in the traditional lifestyle versus what the agency found and the district court approved, that she was not involved in any traditional activities. And then this is based on the whole record review. The court didn't say, let's send it back to the agency on a remand to resolve these issues. It was clear. It was, this is going back and Ms. Shah, after 49 years, is going to be certified after 49 years of losing her ranch, is now going to be certified to get a replacement home. I mean, that in and of itself shows that the agency and the agency's litigation position throughout this case was not substantially justified. They were spinning an argument that was not justified, that was not in the factual record. And they have continued that same position even today. You know, they're saying that Ms. Shah said she never ranched on the HPL. Well, that's not true. That's not true. What she said is after the fence in 1975 went in, she didn't ranch. So, they have continued this position that is not justified and not supported by the record and is not supported by the law, including arguing that their customary use policy is not binding after they admitted to it in the Begay case before the district court. All right. Thank you very much, counsel. You're well over time, but we really appreciate your argument as well as the government's argument. The matter is submitted. And that concludes our argument calendar for today and for the week. Court is adjourned. All rise. The court for this session stands adjourned. Thank you.
judges: NGUYEN, COLLINS, Korman